# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2303 | **DATE** | 9/11/2001 |
| **CASE TITLE** | Bigalke vs. Creditrust Corp. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Report and Recommendation to the Hon. Blanche M. Manning recommending that the District Judge certify two classes in this case as stated in the attached Report and Recommendation submitted herewith. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995). *Geraldine Soat Brown*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | **SEP 1 4 2001** | **93** |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | *8B* | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | date mailed notice | |
| kf | courtroom deputy's initials | 20-7 FILED FOR DOCKETING 01 SEP 13 AM 8: 07 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



DOCKETED
SEP 14 2001

SHERRY BIGALKE,                     )
formerly known as                   )
SHERRY L. ANDERSON                  )
and DIANE M. CRESSON,               )
      Plaintiffs,         )   Cause No. 99 C 2303
                         )
          v.             )   **Judge Blanche M. Manning**
                         )   **Magistrate Judge Geraldine Soat Brown**
CREDITRUST CORPORATION              )
      Defendant.          )
                         )

To:    The Honorable Blanche M. Manning
       United States District Court Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

Plaintiffs Sherry Bigalke and Diane Cresson allege in their Amended Complaint [Dkt #44] that defendant Creditrust Corporation ("Creditrust") is a debt collection firm that has issued a form debt collection letter to the plaintiffs and other Illinois residents that is misleading in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.* The District Judge has referred the plaintiffs' Motion for Class Certification [Dkt ## 45, 61] for report and recommendation by the Magistrate Judge. [Dkt #50A.][1] For the following reasons, this Court respectfully recommends that

---

[1] Creditrust filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as to Count II of the Amended Complaint, which alleges violation of the CROA. [Dkt #49.] On August 8, 2001 the District Judge issued a Memorandum Opinion and Order denying Creditrust's motion. [Dkt #88.]

1

the plaintiffs' motion be GRANTED and that two classes be certified pursuant to Fed. R. Civ. P. 23(b)(3) as defined below.

## PLAINTIFFS' COMPLAINT AND CLASS CERTIFICATION MOTION

The plaintiffs' Amended Complaint alleges that Creditrust purchases delinquent debts at a discount from various financial institutions, mostly credit card issuers, then attempts to collect on the debts. (Am. Compl. ¶¶ 6, 7.) As of December 31, 1998, Creditrust owned over 1.3 million such debts, with a charged-off value of over $2.5 billion. (Am. Compl. ¶ 7.) Approximately 3.1% of Creditrust's portfolio ($77.5 million [as of December 31, 1998]) consists of debts owed by Illinois residents. (Am. Compl. ¶ 9.) Assuming the average debt is $1,000, Creditrust [as of December 31, 1998] acquired debts from approximately 77,500 individuals in Illinois who are potential members of the class in this lawsuit. (Am. Compl. ¶¶ 25, 35.)

Plaintiffs Sherry Bigalke ("Bigalke") and Diane M. Cresson ("Cresson") (collectively "Plaintiffs") both Illinois residents, allege that each of them received by mail in December 1998 an identical form letter from Creditrust. (Am. Compl. ¶¶ 3, 4, 11, 12.) The form letters advised that Creditrust had purchased a debt owed by the respective Plaintiffs to a creditor, and sought payment of the debt. (Am. Compl., Exs. A and B.) The form letters state, in relevant part:

> We are NOT a collection agency. We OWN this account, therefore we can completely remove the entire outstanding balance from your credit report and consider this account paid.
>
> Creditrust is prepared to report your account to the credit bureau as satisfied in full, once you complete any of the payment options below.

(Am. Compl., Exs. A and B.) Plaintiffs allege that these representations "are misleading, in that they suggest to an unsophisticated consumer that Creditrust can completely remove a report of a bad debt

2

from his or her credit report," which allegedly is not true. (Am .Compl. ¶¶ 19, 20.) Plaintiffs also allege that the form letter's promise to report a debt as "satisfied in full" is "vague and obfuscatory" and is not the accepted terminology in the credit industry, which makes the form letter further misleading. (Am. Compl. ¶ 21.) Plaintiffs allege these representations constitute violations of § 1692e(10) of the FDCPA and §§ 1679b(a)(3) and (4) of the CROA.[2]

Plaintiffs allege that they bring their claims on behalf of a class that includes all persons with certain characteristics, *i.e.,*: 1) who were mailed letters similar to Amended Complaint Exhibits A and B; 2) on or after July 31, 1998 (Count I – FDCPA claim) or on or after April 8, 1998 (Count II – CROA claim); 3) to an Illinois address; 4) where the letters were not returned by the Postal Service; and 5) which letters, as to the FDCPA claim, Count I, were in connection with an attempt to collect a debt which can be determined to be a consumer debt by Creditrust's records, the records of the creditor or the nature of the creditor or of the debt. (Am. Compl. ¶¶ 24, 34.) Plaintiffs seek certification for two classes: one pertaining to the FDCPA claim, Count I, comprising all five of the above class characteristics, with July 31, 1998 as the relevant date; and one pertaining to the CROA claim, Count II, comprising the first four of those characteristics, with April 8, 1998 as the relevant date. (Pls.' Mot. for Class Certification at 1-2, hereinafter "Pls.' Mot.")

Under Fed. R. Civ. P. 23(a), Plaintiffs may bring a class action against Creditrust only if: 1) the class of potential plaintiffs is so numerous that joinder of all members is impracticable; 2) the

---

[2] FDCPA § 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10). CROA § 1679b(a)(3) prohibits a person from making or using "any untrue or misleading representation of the services of [a] credit repair organization." 15 U.S.C. § 1679b(a)(3). CROA § 1679b(a)(4) prohibits a person from engaging directly or indirectly in any act that causes or attempts to commit "a fraud or deception on any person in connection with the offer or sale of the services of [a] credit repair organization." 15 U.S.C. § 1679b(a)(4).

claim involves questions of law or fact common to the class; 3) the claims of Plaintiffs are typical of the claims of the class; and 4) Plaintiffs will fairly and adequately protect the interests of the class. In addition, Fed. R. Civ. P. 23(b)(3), the specific provision under which Plaintiffs seek class certification, requires that the Court find that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy.

## DISCUSSION

Creditrust challenges whether Plaintiffs have met two of these requirements. First, Creditrust contends that Plaintiffs Bigalke and Cresson, as well as Plaintiffs' counsel, Edelman, Combs & Latturner, do not qualify to represent the interests of the class. (Def.'s Mem. of Law in Opp'n to Pls.' 2nd Mot. for Class Certification at 1, 3, 10 n.3 [Dkt #86], cited herein as "Def.'s Mem.") Second, Creditrust contends that questions common to the class do not predominate over questions affecting only individual members of the class. (Def.'s Mem. at 2, 11.)

Notwithstanding Creditrust's decision to challenge only two of the six certification requirements of Rule 23, the court must determine whether all six prerequisites are demonstrated. The Amended Complaint contains allegations regarding each requirement. However, unlike the situation on a motion to dismiss under Rule 12(b)(6), the Court is not bound to accept such allegations as true for purposes of a motion for class certification. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 676-77 (7th Cir. 2001). On the contrary, the Seventh Circuit in *Szabo* emphasized that the trial court must make "whatever factual and legal inquiries are necessary under Rule 23." *Id.* at 676. Unlike the situation of a Rule 12(b)(6) motion, where the allegations accepted as true at the motion stage will be tested later by summary judgment motion or trial,

4

> [b]y contrast, an order certifying a class usually is the district judge's last word on the
> subject; there is no later test of the decision's factual premises (and, if the case is
> settled, there could not be such an examination even if the district judge viewed the
> certification as provisional).

*Id.*

Accordingly, before addressing the two requirements for certification that Creditrust challenges, the Court considers whether the other four requirements – numerosity, commonality, typicality, and superiority – are satisfied.

### 1.    *Numerosity*

Plaintiffs' Amended Complaint alleges a potential class of more than 77,500 persons, assuming that the individual credit card debts of the persons to whom Creditrust sent the form letter averaged $1,000. (Am. Compl. ¶ 25.) Plaintiffs have submitted discovery requests seeking to determine the size of the class. (Pls.' Mot., Ex. E.) In response to Plaintiffs' requests to admit, Creditrust admits that it "regularly used" the subject form letter during the period in question. (Pls.' Mot., Ex. D at Req. and Answer 15.) Creditrust admits that it purchases debts in substantial blocks from credit card issuers. (Pls.' Mot., Ex. D at Req. and Answer 5.) Creditrust also admits that as of December 31, 1998, it held over 1.3 million payment obligations ("receivables") worth a charged-off amount of over $2.5 billion, and that 3.1% of this total consisted of debts owed by Illinois residents, although Creditrust denies that the total charged-off amount of debts owed by Illinois residents was over $77.5 million. (Pls.' Mot., Ex. D at Req. and Answer 6, 10, 15.)

Plaintiffs' discovery includes a request asking Creditrust to admit that more than 20 persons were sent letters similar to the ones sent to Plaintiffs, on or after July 31, 1998, to Illinois addresses, and that the letters were not returned by the Postal Service. (Pls.' Mot., Ex. D at Req. and Answer 23.) Creditrust answered this by stating, "After reasonable inquiry, the information known or readily

obtainable to Creditrust is insufficient to enable Creditrust to admit or deny this request."[3] (Pls.'
Mot., Ex. D at Req. and Answer 23.) Creditrust provided identical answers to similar requests to
admit, which asked whether Creditrust had sent 40, 100, 300 or 500 letters similar to Exhibit A to
Illinois addresses on or after July 31, 1998, which were not returned by the Postal Service. (Pls.'
Mot., Ex. D at Req. and Answer 25, 27, 29, 31.) The fact that Creditrust cannot admit or deny a
request asking whether it sent 500 letters similar to Exhibit A suggests that the numerosity
requirement is met.

In a similar claim under the FDCPA, the court was able to conclude that the numerosity
requirement was satisfied based on the size of the defendant debt collection firm and the frequency
with which it issued collection letters. *Sledge v. Sands,* 182 F.R.D. 255, 258 (N.D.Ill. 1998). In
*Sledge*, the court noted that the plaintiff issued discovery requests seeking to determine the number
of persons to whom defendant sent form collection letters. Although the defendant apparently had
yet to respond to the discovery requests, the court noted that the defendant, in objecting to the class
certification motion, did not argue that joinder of claimants was practicable.

Courts frequently certify classes in the hundreds or thousands; and, depending on factors such
as the (small) size of potential individual claims and the lack of financial resources or ability of
prospective class members to bring individual claims, courts have certified classes numbering 40 or
even fewer. *Newberg on Class Actions,* §§ 3.05 at 3-23, 3-25 (3d ed. 1992). Plaintiffs need not
allege the exact number of class members. *Id.* at 3-19. Creditrust's admissions, together with its
failure to contest the numerosity requirement, are sufficient for the Court to determine that the class

---

[3] Creditrust denied a similar request to admit that included the additional admission that the
letters were sent in connection with attempts to collect consumer debts. (Pls.' Mot., Ex. D at Req.
and Answer 22.)

of Illinois residents who received the form letter is so numerous that joinder of their individual claims would be impracticable.

### 2.   *Commonality*

Rule 23(a) requires that there be questions of law or fact common to the class. That requirement is satisfied by a common nucleus of operative fact that pertains to all prospective class members. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998). It is not necessary to find that all factual or legal questions raised in the litigation are common to the class. It is sufficient if the class members share at least one common issue. *McDonald v. Washington Mut. Bk., FA,* No. 99 C 6884, 2000 WL 875416, at *2 (N.D.Ill. June 26, 2000) (Lindberg, J.). A debt collector's standardized conduct of mailing form letters to members of the proposed class is frequently determined to be a common nucleus of operative fact sufficient to satisfy the commonality requirement of Rule 23(a). *Keele,* 149 F.3d at 594, citing cases.

As noted previously, Creditrust admits that it had a standard practice during the relevant time period of mailing form letters like those received by Plaintiffs to persons in Illinois whose credit card debts Creditrust had acquired. Accordingly, the Court finds that Plaintiffs have met the Rule 23(a) requirement that all prospective class members share at least one common factual and legal issue.

### 3.   *Typicality*

Whether Plaintiffs' claims are typical of those of the other members of the prospective class is closely related to the commonality issue. *Keele,* 149 F.3d at 595. Plaintiffs' claims are typical of the class claims if they arise out of "the same event or practice or course of conduct that gives rise to the claims of other class members" and are "based on the same legal theory." *Id.,* quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983).

7

Here, as in *Keele*, the claims of all class members arise out of Creditrust's admitted practice or course of conduct of sending the same standard form letter to other class members that was sent to Plaintiffs. Similarly, Plaintiffs' claims that sending this form letter violated the FDCPA and CROA are typical of the claims to be raised by all other class members. Hence, like the court in *Keele*, this Court is "confident that [Plaintiffs have] met Rule 23's typicality requirement." *Id.*

### 4. *Superiority*

Before addressing Creditrust's two objections, the Court will discuss the last-listed factor in the required analysis: whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The Rule lists the following matters as pertinent to the Court's finding on this issue:

> (A) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

It is evident from the language of the FDCPA and CROA statutes that Congress regarded claims arising from those statutes to be likely subjects for class actions. Both statutes contain express provisions relating to calculation of damages in a class action proceeding. FDCPA, 15 U.S.C. §§ 1692k(a)(2)(B) & (b)(2); CROA, 15 U.S.C. §§ 1679g(a)(2)(B) & (b)(4). The members of the proposed class in this case have small individual claims that are not economically feasible to litigate unless adjudicated in a class action. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). Thus, courts in this District have recognized that a class action is often the superior way of adjudicating claims under the two statutes. *See, e.g., Nance v. Lawrence Friedman P.C.,*

No. 98 C 6720, 1999 WL 966444, at *1 (N.D.Ill. Oct. 19, 1999) (Kennelly, J.) (citing cases). Creditrust does not suggest that this class action might interfere with other litigation already commenced by members of the class. The class action proposed by the Plaintiffs meets the superiority requirement of Rule 23(b)(3).

**DEFENDANT'S OBJECTIONS**

Creditrust's argument against class certification focuses on two objections: Whether questions of law or fact affecting only individual members of the class predominate over questions common to the class; and the ability of Plaintiffs and Plaintiffs' counsel to protect the interests of the class fairly and adequately.

### 1.    *Predominance*

As stated above, Plaintiffs' Amended Complaint alleges that Creditrust's form letter is misleading in that it falsely suggests to an unsophisticated consumer that Creditrust can completely remove a bad debt from his or her credit rating. (Am. Compl. ¶¶ 18-20.) The Amended Complaint further alleges that the letter's promise to report a debt as "satisfied in full" is vague and obfuscatory. (Am. Compl. ¶ 21.) "Where the rights of many consumers are violated by the same or similar instrument, predominance is readily satisfied." *Wells v. McDonough*, No. 97 C 3288, 1998 WL 160876, at *6 (N.D. Ill. March 31, 1998) (Marovich, J.).

Virtually ignoring the actual wording of the letter and the allegations of the Amended Complaint, Creditrust seizes upon one sentence in Plaintiffs' Memorandum[4] and frames the issue

---

[4] Plaintiffs stated, "The above language suggests to an unsophisticated consumer that Creditrust can completely remove a report of a bad debt from his or her credit report. However, nothing that Creditrust can do will erase a prior negative credit report made by the original owner of the debt or meaningfully improve the consumer's credit report." (Pls.' Mem. at 1-2.)

as "whether Creditrust's implication [in the form letter]–that payment on the debt will necessarily improve the consumer's ability to obtain credit–is true or false." (Creditrust's Sur-reply Mem. of Law in Opp'n to Pls.' 2nd Mot. for Class Certification [Dkt #92] at 2.) This, Creditrust argues, may be true for some consumers but not true for others. Thus, Creditrust argues, to determine whether Creditrust is liable under the two statutes will require "inquiry into the unique credit history and other unique personal characteristics of each and every member of the putative class," creating "a predominance of individual issues rather than common ones." (Def.'s Mem. at 2.)

Plaintiffs contend that "[t]he dispositive issue–indeed the only issue–is whether the text of the letter is misleading." (Pls.' Mem. at 12, emphasis in original.) Plaintiffs argue:

> [T]he statement that the debt can be "completely removed" is false and misleading as to every recipient of a Creditrust letter, as each person has a charged off debt which Creditrust purchased and is attempting to collect [which charged off debt cannot be removed from the person's credit record by payment of the Creditrust debt]. There are no individual issues which preclude the common question as to whether or not this statement is misleading.

(Pls.' Reply in Supp. of their Mot. for Class Certification ("Pls.' Reply") at 9, emphasis in original.) Plaintiffs attach as an exhibit to their Reply a copy of Bigalke's credit report referring to the debt Creditrust sought to collect in the form letter it sent to Bigalke. (Pls.' Reply, App. E.) That credit report shows the debt Creditrust purchased as two entries: First, as a credit card debt charged off by Amoco; and second, as the same debt now owned by Creditrust. Plaintiffs contend that even if Bigalke makes full payment to Creditrust and removes the second item from her credit record, the payment to Creditrust cannot remove the notation that Bigalke defaulted on payment of her debt to Amoco. (Pls.' Reply at 8-9.)

Plaintiffs and Creditrust submit to the court documents from their respective experts on the issue of whether a consumer's credit would be "meaningfully improved" by the payment of the debt

to Creditrust. *See* Def.'s Mem., Ex. E: Expert Report of Don Whittaker; and Pls.' Reply, App. D: Affidavit of Edward C. Lawrence. However, this battle of experts need not be resolved, because it is not relevant to the present issue.

The statutes at issue prohibit a debt collector from using "any false representation or deceptive means to collect or attempt to collect a debt" (FDCPA § 1692(e)) or from making or using "any untrue or misleading representation of the services of [a] credit repair organization." (CROA § 1679(a)(3).) *See* footnote 2, *above*. Creditrust argues that, notwithstanding the Plaintiffs' allegation that the text of the form letter is literally false, "if a payment on the debt to Creditrust will actually result in a meaningful improvement of the particular recipient's credit rating, the collection letter does not imply a false message and is not misleading." (Def.'s Mem. at 11-12.) Creditrust cites no authority in either its Memorandum of Law or its Sur-reply for that argument, which is contrary to the express provisions of the statutes.

Creditrust argues that the Plaintiffs' claim is premised on the theory that consumers are "con[ned] into paying the delinquent debt on the false hope of an improved credit rating." (Creditrust's Sur-Reply at 6.) However, whether individual consumers would be "conned" or had false hopes is irrelevant. As Plaintiffs note, under the FDCPA, the test for liability is whether an "unsophisticated consumer" would be misled by Creditrust's letter into believing something that is not true, not whether any class member actually was misled. (Pls.' Mem. at 3, citing *Avila v. Rubin,* 84 F.3d 222 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254 (7th Cir 1994); and *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir. 1997).) The "unsophisticated consumer" standard eliminates for purposes of liability the question of what a specific individual inferred from the form letters and whether or not that inference would be correct or incorrect as to that individual.

*Bartlett v. Heibl,* 128 F.3d 497 (1997), makes clear that liability under the FDCPA does not

depend on the circumstances of the individual plaintiff who receives a misleading debt collection

notice. In *Bartlett,* as in the present case, the plaintiff sought only statutory damages, not actual

damages.[5] *Id.* at 499. That being the case, the court found it did not matter whether the plaintiff had

---

[5] The FDCPA makes the following provision for recovery of damages:

**15 U.S.C. § 1692k. Civil Liability**
**(a)      Amount of damages**
         Except as otherwise provided by this section, any debt collector who fails to
comply with any provision of this subchapter with respect to any person is liable to
such person in an amount equal to the sum of –
         **(1)** any actual damage sustained by such person as a result of such failure;
         **(2)(A)** in the case of any action by an individual, such additional damages as the
         court may allow, but not exceeding $1,000; or
         **(B)** in the case of a class action, (i) such amount for each named plaintiff as could be
         recovered under subparagraph (A), and (ii) such amount as the court may allow for
         all other class members, without regard to a minimum individual recovery, not to
         exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

Plaintiffs' prayer for relief on the FDCPA claim seeks: "The maximum amount of statutory
damages provided under 15 U.S.C. § 1692(k)." There is no allegation of or claim for actual damages
on the part of Plaintiffs. (Am. Compl., Count I.)

The Credit Repair Organizations Act provides for damages as follows:

**15 U.S.C. § 1679g. Civil liability**
**(a) Liability established**
         Any person who fails to comply with any provision of this subchapter with
respect to any other person shall be liable to such person in an amount equal to the
sum of the amounts determined under each of the following paragraphs:
         **(1) Actual damages**
         The greater of –
                 **(A)** the amount of any actual damage sustained by such person as a
         result of such failure; or
                 **(B)** any amount paid by the person to the credit repair organization.
         **(2) Punitive Damages**
                                 * * *
                 **(B) Class actions**
                 In the case of a class action, the sum of –

12

even read the collection letter, much less whether he had been confused by it. *Id*. at 499, 501. If it were established that the letter was confusing to a hypothetical unsophisticated consumer--which is a question of fact, *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999)--the court then would determine how much of the statutory award--up to $1,000--to grant the plaintiff. *Bartlett*, 128 F.3d at 499.

That point was reemphasized in *Keele*, where the court noted that the injury under the FDCPA is the receipt of the collection letter. 149 F.3d at 593. It does not matter whether the person paid the debt, nor whether the plaintiff otherwise can prove actual damages; it does not matter whether the debt claimed was or was not legitimate. *Id*. at 593-94. Hence there is no need to examine each class claimant's situation on an individual basis. *Id*. at 594.

Although there are fewer reported cases discussing the CROA, Creditrust does not argue that a different standard applies to that claim. The fact that Congress expressly anticipated class actions to enforce the CROA suggests that, at least for determining whether common questions of law or fact predominate, it is the text of the form letter that is critical, rather than any individual class member's understanding of the letter or whether any class member incurred actual damages.

The issue as to either the FDCPA or the CROA claim is whether an unsophisticated consumer would be mislead by the text of letter into believing something that allegedly is not true,

---

      **(i)** the aggregate of the amount which the court may allow for each named plaintiff; and
      **(ii)** the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

Plaintiffs' prayer for relief on the CROA claim seeks: "Such damages as the Court may award." As with the FDCPA, Plaintiffs make no allegation of or claim for actual damages on the part of Plaintiffs. (Am. Compl., Count II.)

*i.e.,* that Creditrust could entirely remove the debt from his or her credit record. Creditrust provides no authority to support its theory that its liability under the FDCPA or the CROA depends upon Plaintiffs' proving that their credit ratings would not be "meaningfully improved" by payment of the Creditrust debt. Likewise, Creditrust's liability to the class members does not depend on whether the class members' individual credit ratings would be improved by their payment of the Creditrust debt.

The Court finds that common issues predominate over individual issues in this case, and therefore class certification is appropriate.

### 2.    *Adequacy of Plaintiffs and their Counsel to Protect Class Interests*

Creditrust contends that neither of the individual Plaintiffs is qualified to represent the class, nor are Plaintiffs' counsel qualified to do so. Three factors are applied to evaluate the adequacy of an individual and counsel to represent the class:

> (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Roe v. Publishers Clearing House, Inc.,* No. 98 C 330, 1999 WL 966977, at *2 (N.D.Ill. Oct. 4, 1999) (Gettleman, J.).

The basis for Creditrust's contention that Bigalke and Plaintiffs' counsel are inadequate representatives arises out of a bankruptcy proceeding commenced by Bigalke prior to her filing the present lawsuit.[6] According to Creditrust, Bigalke filed for bankruptcy and initially failed to list as

---

[6]   The following recitation of facts is drawn from Creditrust's Memorandum, pp. 3-11, Plaintiffs' Reply, pp. 2-7, and various documents attached as exhibits to the parties' respective memoranda.

14

a protected asset the potential recovery she might make in the present lawsuit. Subsequently–still prior to filing the present lawsuit–Bigalke amended her bankruptcy disclosure, indicating she owned a prospective FDCPA claim against Creditrust, from which she anticipated a maximum recovery of $1,000, as well as another FDCPA claim against a medical center, from which she also anticipated a maximum $1,000 recovery.

Creditrust cites an Illinois statutory provision that allows a bankruptcy petitioner to exempt up to $2,000 of disclosed assets from attachment by creditors. 735 ILCS 5/12-1001(b). Bigalke's belated disclosure of the two FDCPA claims presumably was to shield the $2,000 in damages Bigalke anticipated from these two cases.

Bigalke's initial disclosure made no mention, however, of any FDCPA claims against ten John Doe defendants–unnamed Creditrust employees. Nor did Bigalke's bankruptcy filing mention the CROA claim. The day after Bigalke filed her amended asset disclosure statement in the bankruptcy case, the bankruptcy trustee made a finding that Bigalke had no assets available to pay her creditors and Bigalke was discharged from bankruptcy. Less than two months later she filed the present lawsuit, which named Bigalke as the sole individual plaintiff representing the class, named as defendants Creditrust and ten Creditrust employees (named as John Does), and brought class action claims under both the FDCPA and CROA. [Dkt #1.]

When Bigalke brought a motion to certify the class [Dkt #16], Creditrust investigated and discovered Bigalke's bankruptcy filing and the asset disclosure statement that named only Bigalke's FDCPA claims against Creditrust and the medical center. Creditrust took the position that by failing to list the potential CROA claim (or the FDCPA claims against unnamed Creditrust employees) as an asset in her bankruptcy filing, Bigalke forfeited the right to include these claims in the lawsuit.

15

Bigalke then voluntarily dismissed the CROA count [Dkt #27], and a month later sought and was granted leave to file an amended complaint [Dkt ##40, 42]. This Amended Complaint–the present pleading–added Cresson as a named plaintiff along with Bigalke, eliminated the John Doe defendants, and renewed the CROA count. [Dkt #43.] Plaintiffs then renewed the motion for class certification. [Dkt #45.]

Creditrust claims that Plaintiffs' counsel, Edelman, Combs & Latturner, colluded with Bigalke in the bankruptcy proceeding to omit reference to the CROA claim and the FDCPA claims against the John Doe defendants from whom Creditrust presumes Bigalke expected to recover $1,000 each in additional statutory damages. The purpose of the purported collusion was to enable Bigalke to conceal these claims, and their potential asset values, from the bankruptcy trustee and Bigalke's creditors. (Def.'s Mem. at 10.) Creditrust sought and obtained leave to conduct additional discovery to prove this theory.[7] Without citing any evidence it may have obtained from that discovery, Creditrust now argues in opposition to the present motion:

> The vast experience of Bigalke's counsel, . . . creates a strong inference that this failure was not merely inadvertent, but rather was a conscious omission that permitted Bigalke and her counsel to claim this litigation as an exempt asset, avoid turning it over to the bankruptcy trustee, and thereby preserve their opportunity to control this litigation and earn fees. Even if the failure to disclose was inadvertent, it suggests that Bigalke and the class have not been adequately represented by EC&L in this case.

(Def.'s Mem. at 10.) Creditrust adds:

> Moreover, EC&L was aware or should have been aware that the doctrine of res judicata would bar the rights of the class members to pursue their CROA claims if Bigalke was permitted to litigate only her FDCPA claim on behalf of the class.

---

[7] Magistrate Judge Denlow, to whom Creditrust presented its theory and motion to conduct additional discovery, permitted a limited investigation of the issue. *See* Tr. of April 17, 2000 proceedings, attached as Appendix A to Pls.' Reply.

> EC&L's willingness to disregard this conflict of interest and sacrifice the claims of their absent class member clients is a breach of their fiduciary duty and precludes a finding of adequacy.

(*Id.*) Based on its res judicata argument, Creditrust contends that, if Bigalke had continued to pursue the FDCPA claim alone, this "would have prejudiced the rights of every class member to pursue a CROA claim." (Def.'s Mem. at 3.)

Plaintiffs' counsel concede they failed to reference the CROA and John Doe FDCPA claims in a communication they sent to Bigalke's bankruptcy attorney advising of what was at the time still only a prospective lawsuit against Creditrust. Plaintiffs' counsel describe the oversight as, in effect, an inadvertent mistake. (Pls.' Reply at 2, 5.) They state that Bigalke's original bankruptcy filing contained no reference to anything about the present claim because Bigalke's counsel in this action did not discover the potential claim until after Bigalke's bankruptcy attorneys, Feld & Korrub, already had filed the bankruptcy petition. (Pls.' Reply at 2.) Plaintiffs' counsel in the present action also state that as to the John Doe FDCPA claims, the law is well-established that the maximum statutory recovery of $1,000 applies "*per case* not per defendant." (Pls.' Reply at 5, citing cases, emphasis in original.) In addition, they point out that the bankruptcy disclosure listed Bigalke's FDCPA claim as being "against Creditrust and 'possible related parties,' and that the maximum recovery was $1,000." (Pls.' Reply at 6.)

An argument similar to Creditrust's was rejected in *Nielsen v. Dickerson*, No. 98 C 5909, 1999 WL 350649 (N.D. Ill. May 20, 1999) (Marovich, J.). In *Nielsen*, the named plaintiff in a FDCPA class action similarly filed for bankruptcy prior to bringing the class claim, and, as with Bigalke, belatedly listed as an exempt asset her interest in the FDCPA claim. The plaintiff failed to identify one of the defendants on the bankruptcy disclosure statement, however. The defendants

argued that this failure to identify one of the defendants was grounds to bar the plaintiff as inadequate to protect the interests of the class. *Id.* at *5. Defendants apparently protested that the plaintiff omitted naming one of the defendants deliberately, in order to protect this claim from attachment by her creditors. The court rejected defendants' argument, reasoning that even if a bankruptcy petitioner conceivably might try to conceal a deep pocket defendant from creditors, that was not likely to be the case in this FDCPA claim, where statutory damages were capped at $1,000. *Id.* at *6.

Creditrust has not demonstrated any actual "collusion" on the part of the Plaintiffs' counsel. The facts fail to suggest any motive for deliberately concealing any claim in the bankruptcy.

Creditrust's speculations about prejudice to the class that *might* have occurred concern an issue made moot by what in fact transpired. Whatever merit there may be in Creditrust's argument that res judicata would bar a subsequent CROA claim had Bigalke proceeded as the lone named plaintiff solely on the FDCPA claim, that argument is merely theoretical. Any such possible prejudice to the class was averted by joining Cresson as an additional named plaintiff and obtaining leave to file the Amended Complaint renewing the CROA claim. As previously noted, the District Judge has denied Creditrust's motion to dismiss that claim, and the CROA claim is thus at issue in this lawsuit. *See* footnote 1, *above*. Accordingly, the Court need not address Creditrust's hypothetical res judicata argument.

Creditrust argues that the Court must find that Bigalke is inadequate to represent the class for the further reason that her "decision to drop the CROA claim was driven by circumstances unique to Bigalke." (Def.'s Mem. at 3.) Creditrust argues that since Bigalke's "personal interests are only in the FDCPA claim . . . her position is different from and antagonistic to that of the class members."

18

(Def.'s Mem. at 8.) Creditrust contends that the typicality requirement of Rule 23(a) "requires that the plaintiff be able to advance the same legal argument as the class members," citing *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 112 (N.D.Ill. 1993). (Def.'s Mem. at 8, n.2.)

The *Williams* case differs significantly from the present situation. In *Williams*, six individual plaintiffs proposed to represent a nationwide class of persons who purchased interests in a limited partnership. Plaintiffs alleged as the class claim that there were misrepresentations in the limited partnership's offering statement that misled class members into purchasing shares in the enterprise. 150 F.R.D. 109, 112. The court in *Williams* examined the individual claims of the six proposed representatives of the class, and found that *none* of the six proposed representatives actually claimed to have relied on the defendant's offering statement in choosing to invest in the limited partnership. *Id.* The court concluded that each proposed representative would be subject to unique defenses, and accordingly would not be able to represent adequately the members of the class, who allegedly purchased in reliance on the offering statement.

The *Williams* case is inapposite. Nothing in the *Williams* case suggests that the fact that Bigalke does not have a CROA claim disqualifies her as a representative of a class bringing claims under the FDCPA. Creditrust does not assert that it has a defense unique to Bigalke on the claim for which she seeks to represent the class, the FDCPA claim. Furthermore, Bigalke's and Cresson's claims are the same as all other class members: that Creditrust sent them a misleading form letter. The defense that Creditrust will raise to the named Plaintiffs is identical to its defense to all other class members: that the form letter is not misleading. Hence it does not matter that Bigalke brings her claim under the FDCPA only, while Cresson brings her claim under both the FDCPA and the CROA. Both plaintiffs have an equally strong interest in litigating the issue of whether the form

letter is misleading.

In a footnote and without citing authority, Creditrust argues that Cresson also is inadequate to represent the class, because she is a "last minute 'substitute'" who is unaware of "key decisions in this matter" such as the fact that Plaintiffs "agreed to limit their monetary claims . . . to Creditrust's insurance proceeds," or that Plaintiffs' counsel has retained an expert for the case and that this expert will charge fees for his services. (Def's Mem. at 10, n.3.)

It is the norm in a class action that the representative plaintiff will know little about the case, and will give free reign to class counsel to prosecute the claim. *Kamen v. Kemper Financial Services, Inc.,* 908 F.2d 1338, 1349 (7th Cir. 1990), *rev'd on other grounds,* 500 U.S. 90 (1991). The Seventh Circuit in its decision in *Kamen* commented that class actions characteristically are "lawyer's vehicles" that "are valuable precisely because they allow the vindication of claims too small to prosecute individually but worth litigating in the aggregate." 908 F.2d at 1349. With such relatively small amounts at stake for individual claimants, it is not unusual for plaintiffs representing the class to have little involvement with the proceedings of the case. Hence, Cresson's purported lack of familiarity with the proceedings in the case would not bar her from acting as a representative plaintiff for the class.

Creditrust attaches as an exhibit to its Memorandum a ten-page excerpt from a 125-page transcript of Cresson's deposition. (Def.'s Mem., Ex. D.) Creditrust claims that this excerpt shows that Cresson is not aware that the amount of recovery is limited by the amount of insurance Creditrust has or that Plaintiffs' counsel hired an expert. (*Id.* at 116-18.) However, that she is not aware of that the recovery is limited by insurance does not demonstrate that Cresson is inadequate to represent the class. Furthermore, contrary to Creditrust's argument, Cresson testified that she

received in the mail a copy of the report prepared by Plaintiffs' expert, Edward Lawrence. (*Id.* at

123-24.) The portions of Cresson's deposition transcript attached as Appendix B to Plaintiffs' Reply

show that Cresson is aware that the claim arises from the letter that she received, and can relate the

allegations of the Amended Complaint to the letter, which she believes is misleading. (Pls.' Reply,

App. B at 78-90.)

> The class representative must understand the basic facts underlying his claims.
> General knowledge and participation in discovery are sufficient to meet this standard.
> In demonstrating a class representative's adequacy, the burden is not a heavy one.

*Sledge v. Sands*, 182 F.R.D. at 259 (citations and quotations omitted). Cresson's deposition shows

that she meets the threshold, and Creditrust has not demonstrated that she does not.

The final factor in determining Plaintiffs' adequacy to represent the class is whether

Plaintiffs' class counsel have the requisite competence, experience, qualifications, and general ability

to conduct this litigation. Plaintiffs' law firm, Edelman, Combs & Latturner, include with the

motion for class certification a review of their firm's experience in consumer-related litigation,

including FDCPA claims. (Pls.' Mem., Ex. F.) They cite FDCPA cases where courts of this District

accepted Edelman, Combs & Latturner as class counsel over objections raised by the same law firm

that is representing Creditrust in this case. (Pls.' Mem. at 10.) They assert that "every judge" in this

District has found their firm to be adequate class counsel. (Pls.' Mem. at 10.)

This history of approval is persuasive. Creditrust fails to provide the Court any reason to

believe that Edelman, Combs & Latturner is not qualified to represent the class in the present case.

Accordingly, the Court finds Edelman, Combs & Latturner to be qualified as counsel for the class,

and finds Bigalke and Cresson to be qualified as class representatives.

# CONCLUSION

For the foregoing reasons, the Court respectfully recommends that the District Judge certify two classes in this case consisting of the following: as to Count I (FDCPA), all persons: 1) who were mailed letters similar to Amended Complaint Exhibits A and B, 2) on or after July 31, 1998, 3) to an Illinois address, 4) where the letters were not returned by the Postal Service, and 5) which letters, were in connection with an attempt to collect a debt which can be determined to be a consumer debt by Creditrust's records, the records of the creditor, or the nature of the creditor or of the debt; as to Count II (CROA), all persons: 1) who were mailed letters similar to Amended Complaint Exhibits A and B, 2) on or after April 8, 1998, 3) to an Illinois address, 4) where the letters were not returned by the Postal Service. The Court further recommends that Plaintiffs Sherry Bigalke and Diane Cresson be accepted as class representatives, and that the law firm of Edelman, Combs & Latturner be accepted as counsel for the class.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

Geraldine Soat Brown
**United States Magistrate Judge**

**Dated: September 11, 2001**